Good morning. May it please the court. My name is Ethan Balowa, and I'll be speaking for appellant Jason Lee this morning. I'll watch my own clock and do my best to save a minute or two for rebuttal. In the short time we have this morning, I think it's best to try to focus on one of the two issues for appeal. And unless the panel has a different preference, and despite the pending on-bank decision in Young v. Holder, I thought we would address the career offender issue. It may well be impacted by Young v. Holder, but I think there's some things we can discuss today. In short, this issue will be determined by whether or not below before Judge Walker, the government presented two qualifying offenses under Section 4B1.2. And what Judge Walker relied on were the two controlled substance offenses, which were both violations of California Health and Safety Code, Section 11352. There's no dispute that that is an overbroad statute, because in addition to the trafficking predicates by which a defendant could be found guilty, it also criminalizes transport of a personal use amount. And ironically or not, in both the two convictions that are presented here, they are very similar. Mr. Lee was stopped while in a car, and the responding officers located contraband on his person. And he was charged and ultimately convicted by guilty plea of California Health and Safety Code, Section 11352. As Your Honors are well aware, the standard for the government to have met at the district court is whether, under the modified catecholic approach, the charging document and supporting documentation from the state court is clear and unequivocal. And that's Navidad-Marcos. I know Judge Thomas is familiar with that. I know you all are. The documents for Count 1, the first one, the 1998 San Francisco conviction, are not clear and unequivocal. The charging document in that case was an information. And as opposed to alleging particular facts which might relate to what Mr. Lee did or did not do on that day in 1998, it essentially charges the entire statute. And all the predicates are purely in legal language, and they're repetitive, and they're inconsistent with each other. He's charged with offering to sell and selling and giving away and importing. And later, he's charged again with giving away and transport. Are you talking about the San Francisco or the Alameda? The San Francisco, Your Honor. OK. This is the very issue before the en banc panel in Young. Is that right? There's an overlap. Or one of them. The two differences would be, Judge Acuda, is one, the en banc panel is addressing the conjunctive issue. One of the differences in the procedural posture of Young is that, and I know both you and Judge Fischer sat on the panel, so you're probably more versant than me, was whether or not the conjunctive language would work. The burden in that case is on Mr. Young, who is the petitioner before the INA. And it's different in this case, we would contend, where the government has the burden, has to prove his conviction clearly and unequivocally. The second thing that makes a difference, and I know the government relies on Snyder and Snellenberger and Williams as sort of their trilogy in support of the conjunction argument. But when we look at those, a distinguishing factor is that each of the information or charging documents in those cases actually alleged facts. It was, they were all burglary cases. And it was, you entered this dwelling or this residence of this person. So it was a residence and two of them. And one of them was a business dwelling, which was Friendly Motors. And the reviewing panel at the Ninth Circuit was able to say, when we look at those charging documents, there are facts that are being admitted. There are actual facts of what we know the defendant did. It's quite like a factual basis. When you plead guilty to entering a residence of a person, you'd be difficult later on to say, there was no evidence I entered a residence of a person. And the argument we're putting forward here sort of stems back to what this court said in Cazares, which is when the charging document is overbroad, it's just statutory language, a defendant's only admitting what's necessary to establish a plea. And that's going back to United States versus Davis, where the notion is a guilty plea or a no-loan plea should stand on equal footing as a criminal conviction by a jury trial. And here you have all the statutory language that doesn't set forth any facts. It's just reprinting the statute. We contend that alone is insufficient for the government to meet its high burden to understand what the defendant did. What was the language in Snellenberger? Was that not tracking the statute? They all track the statute, as its charging documents do. But what they do is, in each of those cases, they named the residence or the place the defendant broke into, or in that case, burgled. And I think Snellenberger is the closest. The language was that he had entered, if I'm remembering correctly, the house and trailer and inhabited dwelling of, and they recited the gentleman's name. And the reviewing court, the on-bank panel, it was a brief discussion. It wasn't the driving force of the Snellenberger decision, was able to conclude that those admissions to those facts were sufficient. But when we look at the charging document here, when it's charging all 14, things that are mutually inconsistent with each other, we contend, regardless of the conjunctive language, that those aren't properly viewed as facts. There needs to be more. And what's important here is, when we look at the minute order the government relies on, the minute order says, at the time of the plea, the trial court made factual findings. And so those were available, or should have been available. And that's what the government needs to get presented to a district judge if they're going to ask and meet that high standard for such an increase in the sentence. And I think that's the big distinction between the two here, and I think it gets support in Davis and Cazares. The second 11-352 conviction is a little more difficult. It's a closer call because they did narrow the statute to say, offer to sell or sell. But here I think the problem the government's going to run into is that the records themselves are inconsistent. The abstract of judgment, which can be relied upon, identifies the conviction as transport or sell. But when you're referring to, this was something I was a little confused by in your brief. The abstract of judgment, is that document related? Was that generated after the actual conviction? Because it's dated May 15, 2001, and seems to be relating to the revocation of parole, so not contemporaneous with the conviction. Am I mistaken? You're reading that exactly correctly. The government did submit all these documents. But the point we were making is, when they submit these documents, when they're inconsistent with each other, that inconsistency takes away a district judge's ability to form a clear and unequivocal answer. Is this 2001 document properly considered under Shepard and Selenberger? Well, I think it is. I think the court just last year in Chuen P. Kwong v. Holder, and the court, it doesn't have a third site yet. But it was decided on December 7, 2011, may be found at 2011 Westlaw 6061513. This Court said yes, that after Shepard, the abstract is like a minute order, and there was no ---- But something several years later, I don't think. Well, I ---- Kwong addressed that, didn't it? Well, I think it's showing what the ---- how the Court's considering its documents. Even if the Court doesn't want to go that far, I don't think contemporaneity is a requirement. I think what debilitates No. 2, no matter what, is that the charging document charged a very specific probation code section under California law, which made probation not possible for a sales offense unless there was statements on the record of why it fit within a narrow interest of justice exception. And in this case, they charged that. He was convicted, and he got probation. So the clear inference was he wasn't convicted of a sales offense because he would not have been probation eligible, and the minute order the government provides shows no stated exceptions that would meet that limited interest of justice exception. I'm going to do my best to reserve the last minute of half, and if I can, to respond to my colleague, and thank you. Thank you, counsel. We'll hear from the government. May it please the Court. Good morning. My name is Lori Gray, and I will jump right into the clear offender statute. The district court properly concluded that the defendant was a clear offender, and he did so based on the two drug crimes that defense counsel just talked about. And the government also submitted evidence with regarding two crimes of violence that also support and put defendant under the clear offender statute. With regard to the 1998 San Francisco drug conviction that defendant first spoke about, the statute 11-352 this Court has held is overbroad, so a modified categorical approach was used. The defendant was charged in the conjunctive, and he pled to each and every charge in that count. He pled guilty to selling, furnishing, administering, and giving away cocaine. And as this Court knows, the law is that when facts are stated in the conjunctive, each factual allegation is taken as true when defendant pleads guilty. And the district court found that the documents that the government had submitted when read together proved beyond a reasonable doubt defendant guilty of that drug trafficking offense, and that was the first predicate conviction under the clear offender. With regard to the second drug conviction, the 1998, defendant concedes that that's a harder hill for him to climb. Again, it was charged in the conjunctive with defendant selling and offering to sell. Defendant pled guilty to that. In his brief, he attacks that as being an attempt, not satisfying the statute. But indeed, this Court in Shoemate noted that solicitation is one of the factors that does make it within a predicate offense under the guidelines. Section 4B1.1 of the sentencing guidelines is inclusive, and it says a controlled substance offense includes attempts to commit. An offering to sell is certainly an attempt to commit. So both of those crimes, the Court properly found, satisfied the predicate. If the Court go ahead. What about the reference to the probation condition? Well, defendant's flaw in that argument is that he says there's this exception with reference to the probation, but there's an exception to the exception, as he notes in his brief, that there is actually an exception to the probation if the Court made the factual findings. And what this Court looks at is the fact of conviction, and those documents were submitted to the Court. So it doesn't matter what the sentence was. You look back at the minute order that was submitted and the indictment that was submitted. And again the ---- But if the ---- I understand his argument is that if it were as you're reading it, he would not have been eligible for probation. Isn't that the argument? Well, there's an also a sub-argument to that, Your Honor, which is that he's saying that it wasn't he could not have been eligible, but then in the same breath he also says that there's an exception to that, and so that brings us back full circle to looking at the charging document. The exception is to the exception is? To the probation. There's an exception to the exception, which I would ---- But that's not present here because we don't have findings, correct? Well, he's speculating with regard to the exception as well. So I think what ---- Well, who has the burden, though? I mean, if the ---- as counsel pointed out in the Enbank case, there's an issue of who has the burden. I agree, Your Honor. Here the government has the burden. So you have to prove clearly that he did plead to the predicate offense that's relevant. I agree, Your Honor, and the change of plea minute order, in fact, shows that. It excerpt of Record 191. So that's ---- I guess getting back to the question of probation eligibility, that cuts against you if the burden is to prove by clear and unequivocal evidence. I mean, that's the issue here for me, is that given the contradictions and the fact that we can't tell one way or the other how the court arrived at its decision. I guess the response to that, Your Honor, is the fact that then there was the exception as the defendant notes in his brief, there's an exception to the probation. No, I understand your argument there, except that it's all sheer speculation. I mean, on the face of it would indicate he's not ---- that he wouldn't have been eligible, and I take ---- I credit your argument that there's an exception to that, but we don't know what happened. So where does that leave us? Where that leaves us, I think, Your Honor, is to look at the document the government submitted, which is the minute order change of plea. And that, again, the change of plea in this case, the defendant pled to the entire charge. And so because of that, we are back where the government has proven that the defendant pled guilty to that drug trafficking offense. If the court disagrees, there are the two crimes of violence. Did Judge Walker reach those? He did not, but it's ---- So how can we ---- Judge Walker did not reach them, but the documents were presented to the district court. Defense counsel had those documents at that time, and as the court knows, you can reach a decision on any evidence that supports it that's contained within the record, and that was submitted to the court. Both of those two crimes, Your Honor, also satisfy under the guidelines predicate offenses for career offender. And I can go through each of those if the court would like. If one of the drug offenses goes out, those two come in to make the defendant a career offender. Now, the difficulty with those, I think, let's ---- is it really don't have much of a battery. You've got an elbow and one offense, and I just don't see in the Section 69 offense that there's any contact with the officers at all that poses a serious risk of injury. Well, there's two different statutes there. I'll start with the Section 69 statute, because the defendant does cite two unpublished decisions where the government has said that it's not a categorical analysis. And those, of course, the court knows, isn't presidential. This Court hasn't published a decision on that. But you don't need to reach that issue, because under the modified categorical approach, what we have in this case from the Section 69, which is a resisting offense, that's not the battery, Your Honor. No, no. It's the resisting. It's the resisting. What we have is a transcript at the change of plea hearing.  and the State Court record, in the preliminary hearing, counsel stipulated the preliminary hearing. Right. The transcript is in. I grant you that. And the preliminary hearing is pretty striking in that the officer testifies under oath to what the defendant did. Right. But there's no ---- maybe I've read the transcript wrong, but the defendant at the time was handcuffed, initially handcuffed to a chair. I don't see any evidence that any officer was injured. Well, one of the ---- that's not one of the ---- Right. There's not much. Tell me what the risk is when a person is handcuffed and there's going to be a serious injury. If I can, Your Honor, the elements that ---- there's two ways to violate that, attempting to deter and actually resisting, and both require actual violence or threats. And threats is at the heart of the risk analysis under James and Sykes and that line of Supreme Court cases. And reading the preliminary hearing, while defendant was being uncooperative, it took four officers to hold him down, he's yelling threats and then he says, I'm going to get the police report, I want all your names, and I'm going to hunt you down. And he talks about another officer that was recently killed and how it's a party in San Francisco when an officer goes down. And that's the essence of that particular charge, the resisting and making threats. And so, Your Honor, I would submit that the documents that were submitted show that under the modified categorical approach, under Section 69. Now, with regard to the 2004 conviction, that was the battery, that's the hit that Your Honor's mentioned. At the elbow, yes. First of all, I would say that categorically it satisfies the statute because battery on a custodial officer includes conduct that presents a serious potential risk of injury to another. So that's the residual clause under the sentencing dialogue. But you would say then anything that would, even if there had been no elbow hit, if he had spit on somebody, you're saying categorically battery is going to, that's what we should decide in this case. In a prison setting. In a prison setting. So inherent in the fact that the person's in prison. Anything where you have an altercation, even if there's not even physical contact, even than just spitting on somebody. We do, Your Honor. We do. The fact that it's in prison, it's a tinderbox, it's a high security, the inmates outnumber the guards that in that particular situation. And then if we looked at the modified categorical approach and we look at the documents, it is indeed a hit. It isn't a spit, it's a hit. The defendant admits that it's a hit. And that is a purposeful, aggressive and violent conduct. And one thing I want to clarify for the record, I don't think defense counsel got to it in his argument, but it was presented in the brief. And the argument was made, and this may go to you, Judge Fischer, that this was a, this wasn't a purposeful act, that it was almost a gross negligence kind of statute. And that's not true. The Laura case, L-A-R-A, the State case, the defendant actually cites, says that conscious disregard is a purposeful mental state. It's a higher mental state than criminal negligence. And so in this case, again, Your Honors, I would submit that that satisfies the statute and under the modified categorical approach. Kennedy, I'm familiar with L-A-R-A. I am troubled by the notion, because I don't think it's an easy call, but prison conditions, jail conditions being what they are, but the idea that any battery could suddenly become a categorical offense is troublesome. We have to speculate a lot in this, on this record to make that declaration. I appreciate that, Your Honor. And then I would say that under the modified categorical approach, it would survive. I have nothing else for the Court on this unless there are any questions or any questions on the other issue raised in the brief. And your time has expired, so your conclusion is out. No, our questions are over. Thank you very much for your argument. Thank you. Do we have about a minute and a half left? Thank you, Your Honor. I'll try to move quickly. I want to just have a couple of responses. One, regarding the count two, the argument I did make, though I do think is important, is I think Rivera-Sanchez deals with California offering. That's another one of your cases, Judge Thomas. It's an 11-360 category. The solicitation under California law is overbroad. That's been established by this Court. Schumante is a very narrow case. Judge Pius's concurrence shows how narrow it is. The Oregon statute there, you had to take a substantial step to have an offer there. That's like an attempt. There's nothing like that in California law. Regarding the crimes of violence, I'll just be brief. The standard after Begay, which is adopted in the circuit in Christensen, is there's three elements that we look to. Purposeful, violent, and aggressive. All three must be shown. Is that consistent with Sykes? I thought in Sykes the Supreme Court rejected that as being the standard. I don't believe so. I think Sykes was dependent upon the fact that the flight was intentional conduct, which was likely to be violent and aggressive. They had statistics demonstrating how dangerous it was, and it was intentional flight. I thought that was the distinguishing factor. It just says that Sykes' argument that Begay requires ACCA predicate crimes to be purposeful, violent, and aggressive overreads these opinions and then rejects it. Then I'll defer to Your Honor. To Justice Kennedy, you'll defer. Him as well. Regarding the battery, I think it's Ortega-Mendoza. Battery in California can be the slightest touching. I don't think the custodial officer setting under 243.1 requires that it be in jail. It's the identity of the person that's harmed, regardless of where he or she is. It's categorically not a crime of violence. The plea agreement in this case was set into passive. On the facts as presented, if he grazed the officer while walking through a magnometer, that would satisfy this plea. That might have what happened here. The trial judge in California asked, what was it, your elbow or your shoulder or something hit an officer? That's not an admission to he hit an officer. We think that's out of context, and we think it falls far short of that. Regarding the conviction for 69, I agree unpublished decisions are not presidential. I think in this case, they're persuasive. That's because for 69, you have two ways of being convicted. People be rasmussen's the case. It's a 2001 court of appeals case. Threats are enough. Officer, if you arrest me, I'm going to sue you. My dad's a big bag lawyer.  You have not committed a crime of violence. The comments of whatever Mr. Lee said that day may not have been the most praiseworthy way to approach the problem he was in. That's putting it lightly. Of course. But by resisting and moving his body, that wasn't a violent act. I'm over my time. I thank you for your time. Thank you very much, counsel. We gave you a little extra time to respond. Thank you both for your arguments this morning. The case will be submitted for decision.
judges: Thomas, Fisher, Ikuta